IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARY KIMBROUGH, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 06-0585-WS-C |
| ) | |
| ROBIN DIAL, *et al.*, ) | |
| ) | |
|     Defendants. ) | |

**ORDER**

    This matter is before the Court on plaintiff's Motion to Remand (doc. 6) this action to the Circuit Court of Clarke County, Alabama. The jurisdictional issue presented in the Motion has been briefed and is ripe for disposition at this time.

**I.    Background.**

    On or about August 7, 2006, plaintiff Mary Kimbrough filed a Complaint in the Circuit Court of Clarke County, Alabama against named defendants Robin Dial and Hudson Salvage, Inc., d/b/a Hudson's Dirt Cheap, as well as certain fictitious defendants. The Complaint alleged that Kimbrough is a citizen of Wilcox, Alabama; that Dial is a citizen of Thomasville, Alabama, and that Hudson Salvage is a Mississippi corporation. (Complaint, ¶¶ 1-3.)

    In the Complaint, Kimbrough asserted Alabama common-law claims against Dial and Hudson Salvage on theories of negligence and wantonness, based on her contention that she slipped and fell on a foreign substance on the floor of Hudson Salvage's business establishment in Thomasville, Alabama on October 12, 2005. The Complaint alleged that defendant Dial was the manager of Hudson Salvage and that she "had direct responsibility over the maintenance of the property" at which the accident occurred. (Complaint, ¶ 9.) The Complaint further alleged that both Dial and Hudson Salvage were negligent or wanton in failing to maintain the premises in a reasonably safe condition, failing to warn plaintiff of the unreasonably dangerous condition, causing or allowing the slippery floor to exist, and failing to establish safe work practices and procedures. (*Id.*, ¶¶ 10, 14.) Kimbrough claims to have sustained injuries in her fall at the

Hudson Salvage site, including a hip injury requiring surgery, bruises, permanent disfigurement, physical and emotional suffering, and the like. (*Id.*, ¶¶ 11, 15.) On August 29, 2006, plaintiff amended her Complaint to include a specific allegation that the amount in controversy exceeded $75,000, exclusive of interest and costs. (Amended Complaint, ¶ 7.)

Shortly thereafter, defendants removed this action to this District Court on grounds of diversity of citizenship, pursuant to 28 U.S.C. §§ 1332 and 1441. In their Notice of Removal (doc. 1), defendants maintained that there is diversity of citizenship between the parties and that the amount in controversy exceeds $75,000, such that federal subject matter jurisdiction vests under § 1332. On its face, this allegation is puzzling, inasmuch as there is no dispute that both plaintiff Kimbrough and defendant Dial are citizens of Alabama. In the Brief (doc. 2) accompanying their Notice of Removal, however, defendants insist that Dial's citizenship should be disregarded because she was fraudulently joined. In response, plaintiff filed a Motion to Remand (doc. 6), contesting defendants' characterization of Dial's status. Ultimately, the jurisdictional posture of this action hinges on the proper application of the fraudulent joinder doctrine to plaintiff's claims against Dial. That singular issue is the focus of the Motion to Remand.

## II.    Governing Legal Standard.

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must establish the existence of federal jurisdiction. *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) ("A removing defendant bears the burden of proving proper federal jurisdiction."). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. *See University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction); *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (expressing preference for remand where removal jurisdiction is not absolutely clear); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (uncertainties regarding removal are resolved in favor of remand); *Newman v. Spectrum Stores, Inc.*, 109 F. Supp.2d 1342, 1345 (M.D. Ala. 2000) ("Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not

absolutely clear.").

As mentioned *supra*, defendants based removal on diversity of citizenship. Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over all civil actions between citizens of different states where the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." *Id.*; *see Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Section 1332 demands complete diversity, such that no plaintiff may be a citizen of the same state as any defendant. *See Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1337 (11th Cir. 2002). That said, however, a non-diverse defendant who is fraudulently joined does not defeat diversity because her citizenship is excluded from the diversity calculus. Thus, "[f]raudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs*, 154 F.3d at 1287. To establish fraudulent joinder, a defendant must demonstrate either that "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. ... The defendant must make such a showing by clear and convincing evidence." *Henderson v. Washington National Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). The burden on the removing party to prove fraudulent joinder is a "heavy one." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *see also Gonzalez v. J.C. Penney Corp.*, 2006 WL 2990086, *3 (11th Cir. Oct. 20, 2006) ("The burden of establishing fraudulent joinder is a heavy one."). In assessing a fraudulent joinder objection, "the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).

For purposes of fraudulent joinder, the Court is mindful that "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Triggs*, 154 F.3d at 1287; *see also GMFS, L.L.C. v. Bounds*, 275 F. Supp.2d 1350, 1353-54 (S.D. Ala. 2003) ("A defendant (typically a resident of the forum) is fraudulently joined if there is no possibility that the plaintiff can prove a cause of action against him."); *Raye v. Employer's Ins. of Wausau,* 345 F. Supp.2d 1313, 1317 (S.D. Ala. 2004) (similar). "The plaintiff need not have a winning case against the allegedly fraudulent

defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287; *see also Pacheco de Perez*, 139 F.3d at 1380 (noting that a mere "colorable claim" is sufficient to negate fraudulent joinder argument). Nonetheless, it bears emphasizing that "[t]he potential for legal liability must be reasonable, not merely theoretical," in order to foil a fraudulent joinder objection. *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) (observing that possibility of liability is evaluated by reason and common sense, and that more is required than such a possibility that a designated residence might be struck by a meteor on a given evening) (citations omitted).[1]

### III. Analysis.

To meet their heavy burden of showing fraudulent joinder by clear and convincing evidence, defendants proffer two distinct legal arguments.

### *A.  Whether Dial Owed a Duty of Care to Kimbrough.*

First, defendants contend, "Dial is an improper party to this action as she did not personally owe the plaintiff a duty to maintain Hudson's in a manner that was reasonably safe." (Defendants' Brief (doc. 2), at 2.)  In making this argument, defendants do not cite a single Alabama authority for the proposition that a store manager owes no duty to business invitees that might give rise to a viable cause of action for negligence or wantonness in these circumstances. Alabama law is ambiguous on this point, and may even be contrary to defendants' position.  In these types of cases, Alabama courts routinely speak in terms of the duty of a "storekeeper" or "shopkeeper" to exercise reasonable care to customers.  *See, e.g., McCombs v. Bruno's, Inc.*, 667 So.2d 710, 712 (Ala. 1995); *Dunklin v. Winn-Dixie of Montgomery, Inc.*, 595 So.2d 463, 465 (Ala. 1992).  Perhaps Alabama courts would exclude store managers from the ambit of the terms "storekeeper" or "shopkeeper."  Perhaps they would not.  On occasion, they appear to have taken the latter approach.  For example, in *Boyd v. Wal-Mart Stores, Inc.*, 710 So.2d 1258

---

[1] In weighing the parties' respective arguments, the Court examines "the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Legg*, 428 F.3d at 1322 (citation omitted). In that respect, the procedural mechanism for resolving a fraudulent joinder objection is akin to that utilized on summary judgment. *See id.*  In this case, neither side has supplemented the record with material outside the pleadings in support of their respective positions; therefore, the fraudulent joinder issue here will be evaluated solely by reference to the four corners of the pleadings.

(Ala.Civ.App. 1997), the court reversed entry of summary judgment in favor of Wal-Mart and two of its managers where the plaintiff alleged that all defendants had acted negligently or wantonly in failing to maintain reasonably safe premises at a Wal-Mart store.  The *Boyd* court did not specifically delineate its reasoning as to the two managers, except to indicate, "We cannot say that, as a matter of law, the evidence before us shows that Wal-Mart, Wilson and Shirley were not negligent" in tending to the accumulation of rainwater on the floor of the store. *Id.* at 1260.  Implicit in the *Boyd* decision, then, is a recognition that the managers of the Wal-Mart store owed a duty of care to customers to ameliorate unduly slippery floor conditions in the store.  Furthermore, plaintiff cites *Waters v. Anthony*, 40 So.2d 316 (Ala. 1949), in which the Alabama Supreme Court explained that a movie theater manager, who was actively managing the theater and had charge of its physical condition, "owed a patron of the theater a duty to exercise due care to have the seat used by her reasonably free from danger." *Id.* at 319.

It is not certain that Alabama state courts would apply *Boyd* and *Waters* in the circumstances pleaded by Kimbrough here.  Indeed, as defendants aptly observe, certain courts in other jurisdictions have declined to impose a duty of care on store managers who may have been situated similarly to Dial.  *See, e.g., Benjamin v. Wal-Mart Stores, Inc.*, 413 F. Supp.2d 652, 655-56 (D.S.C. 2006) (predicting in slip and fall case alleging negligence against store manager that South Carolina state courts would find that manager owed no affirmative duty to act and prevent customer's injuries); *Griffin v. Dolgen Corp.*, 143 F. Supp.2d 670 (S.D. Miss. 2001) (making a similar forecast about Mississippi law, while recognizing that this determination was ultimately the province of the Mississippi Supreme Court, which had not ruled on the issue).[2]

This Court is not as sanguine about Alabama law as the district courts in *Benjamin* and *Griffin* were about the law of their respective states.  The *Boyd* and *Waters* decisions at least raise a reasonable possibility that Alabama courts would impose a duty of care on a store manager such as Dial in the circumstances alleged in the Complaint.  More importantly,

---

[2] *See generally Dodson v. K-Mart Corp.*, 891 So.2d 789 (La. App. 3 Cir. 2004) (explaining that a "manager of a retail establishment is not automatically personally liable for injuries that may occur on the premises under his 'watch,'" without indicating that no duty could ever attach to such a manager).

however, the Eleventh Circuit's recent opinion in *Henderson v. Washington National Ins. Co.* strongly counsels against this Court engaging in the sort of speculative crystal ball-gazing enterprise that the *Benjamin* and *Griffin* courts did.  In *Henderson*, there was a substantial question of unsettled Alabama law as to whether the complaint successfully pleaded a cause of action for fraudulent concealment against the allegedly fraudulently joined defendant.  *Henderson* declared that "the decision as to the sufficiency of the pleadings is for the state courts, and for a federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands."  454 F.3d at 1284 (reversing district court's denial of motion to remand on fraudulent joinder grounds).  This approach is reinforced by *Pacheco de Perez*'s admonition that district courts examining fraudulent joinder arguments must "resolve any uncertainties about the applicable law in the plaintiff's favor."  139 F.3d at 1380.  In light of these authorities, this Court will not and cannot resolve the fraudulent joinder issue by articulating bold forecasts and fearless predictions as to how Alabama state courts might resolve this unsettled duty of care question.  Instead, this Court will defer to the state courts on this topic and will resolve uncertainties concerning applicable law in Kimbrough's favor.  As such, defendants have not met their burden of showing by clear and convincing evidence that there is no reasonable possibility that Kimbrough's negligence and wantonness claims against Dial could be sustainable under Alabama law.

    B.   ***Whether Dial Personally Contributed to Kimbrough's Injuries.***

  Second, in the alternative, defendants maintain that "Dial is an improper party to this action since she did not personally contribute to the plaintiff's injuries."  (Defendants' Brief, at 6.)  Certainly, it is a correct statement of Alabama law that an agent of the corporation cannot be held individually liable for a corporation's negligent or wrongful acts unless she contributed to or participated in them.  *See generally Ex parte McInnis*, 820 So.2d 795, 798-99 (Ala. 2001) ("A corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort."); *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So.2d 774, 775 (Ala. 1986) ("In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity.").

Defendants cannot prevail under this line of cases because the Amended Complaint adequately pleads participation by Dial. In particular, the Amended Complaint alleges that Dial personally failed to maintain the store in a reasonably safe condition, that she personally failed to warn Kimbrough of the unreasonably dangerous condition, and that she personally caused or allowed the unreasonably dangerous condition to exist. (Amended Complaint, ¶¶ 10, 14.) Defendants offer no reasonable basis for concluding that these allegations are insufficient as a matter of law to satisfy Alabama's "personal participation" prerequisite for personal liability for a corporate agent.[3] Accordingly, there is no pleading defect as to the "personal participation" requirement which might negate any reasonable possibility of imposing legal liability against the non-diverse defendant.

## IV. Conclusion.

For all of the foregoing reasons, the undersigned concludes that defendants have failed to meet their heavy burden of proving by clear and convincing evidence that defendant Dial was fraudulently joined. In light of that determination, Dial's citizenship must be considered in applying the diversity provisions of 28 U.S.C. § 1332. It is undisputed that defendant Dial is of non-diverse citizenship from plaintiff Kimbrough, inasmuch as both of them are citizens of Alabama. Accordingly, Dial's presence as a non-diverse defendant precludes the exercise of diversity jurisdiction over this action and defeats removal. On that basis, plaintiff's Motion to Remand (doc. 6) is **granted**, and this action is hereby **remanded** to the Circuit Court of Clarke County, Alabama pursuant to 28 U.S.C. § 1447(c), for further proceedings.

DONE and ORDERED this 8th day of December, 2006.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE

---

[3] Instead, defendants merely argue in conclusory fashion that "[t]here are no allegations in the pleadings that Dial took any personal action that contributed to the plaintiff's injuries." (Defendants' Brief, at 7.) This characterization of the Amended Complaint is inaccurate, for the reasons stated above.